Citation Nr: 1448532 
Decision Date: 10/31/14 Archive Date: 11/05/14

DOCKET NO. 06-24 661 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Pittsburgh, Pennsylvania


THE ISSUE

Entitlement to an increased rating for hypertensive heart disease (HHD) (previously characterized as hypertension with cardiomegaly), currently rated as 60 percent disabling.


REPRESENTATION

Appellant represented by: The American Legion


ATTORNEY FOR THE BOARD

J. Abrams, Associate Counsel





INTRODUCTION

The Veteran served on active duty from July 1969 to July 1971, and from November 1971 to February 1988.

This matter is before the Board of Veterans' Appeals (Board) on appeal from a July 2005 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Pittsburgh, Pennsylvania, which continued a 10 percent disability rating for hypertension with mild cardiomegaly. The Veteran filed a notice of disagreement (NOD) in January 2006 and the RO issued a statement of the case (SOC) in June 2006. The Veteran filed a substantive appeal in July 2006. 

In a June 2006 rating decision, the RO awarded a 30 percent rating for hypertensive heart disease (previously evaluated as hypertension with mild cardiomegaly) effective to the date of claim of April 8, 2004.

The Veteran requested a Board hearing and was scheduled for a hearing in August 2008. However, the Veteran did not report for the hearing. Consequently, he is deemed to have waived his hearing request. See 38 C.F.R. §§ 20.703, 20.704 (2014). Therefore, the Board may proceed to adjudicate this appeal.

This case was previously before the Board in August 2010, September 2011, and June 2013 when it was remanded for additional development. In February 2014, this case was once again before the Board. In that decision, the Board awarded a 60 percent rating for HHD, but remanded the issue of entitlement to a rating greater than 60 percent for HHD due to evidentiary deficits. For the reasons discussed below, the Board finds that there has been substantial compliance with its prior remand directives. See Stegall v. West, 11. Vet. App. 268 (1998).


FINDING OF FACT

Throughout the appellate period, the Veteran's HHD has approximated left ventricular ejection fraction from 50-55 percent but has not approximated chronic congestive heart failure, or; workload of 3 METs (metabolic equivalent) or less results in dyspnea, fatigue, angina, dizziness, or syncope, or; left ventricular dysfunction with an ejection fraction of less than 30 percent. 38 C.F.R. § 4.104, Diagnostic Code (DC) 7007 (2014).


CONCLUSION OF LAW

The criteria for an increased rating for HHD, in excess of 60 percent, have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2002); 38 C.F.R. §§ 3.102, 3.159, 3.321(a), 4.1, 4.3, 4.7, 4.104, DC 7007 (2014).


REASONS AND BASES FOR FINDING AND CONCLUSION

In deciding claims, it is the Board's responsibility to evaluate the entire record on appeal. See 38 U.S.C.A. § 7104(a) (West 2002). Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, certainly not in exhaustive detail, each and every piece of evidence submitted by the Veteran or on his behalf. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (noting that the Board must review the entire record, but does not have to discuss each piece of evidence). Rather, the Board's analysis below will focus specifically on what evidence is needed to substantiate the claim and what the evidence in the claims file shows, or fails to show, with respect to the claim. See Timberlake v. Gober, 14 Vet. App. 122, 128-30 (2000).

I. The Duties to Notify and Assist

As provided by the Veterans Claims Assistance Act of 2000 (VCAA), VA has a duty to notify and assist a claimant in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2002); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2014).

Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his or her representative, if any, of any information, and any medical or lay evidence, that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a) (West 2002); 38 C.F.R. § 3.159(b) (2014); Quartuccio v. Principi, 16 Vet. App. 183 (2002). Proper notice from VA must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. This notice must be provided prior to an initial unfavorable decision on a claim by the agency of original jurisdiction (AOJ). Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004).

In a claim for increase, the VCAA notice requirements are the type of evidence needed to substantiate the claim, namely, evidence demonstrating a worsening or increase in severity of the disability and the effect that worsening has on employment. Vazquez-Flores v. Shinseki, 580 F.3d 1270 (Fed. Cir. 2009) (interpreting 38 U.S.C.A. § 5103(a) as requiring generic claim-specific notice and rejecting Veteran-specific notice as to effect on daily life and as to the assigned or a cross-referenced Diagnostic Code under which the disability is rated).
The U.S. Supreme Court has made clear that VCAA notice errors, even when shown to have occurred, are not presumptively prejudicial, rather, must be judged on a case-by-case basis. Moreover, as the pleading party attacking the agency's decision, the Veteran has this burden of proof of not only establishing error, but also, above and beyond that, showing how it is unduly prejudicial, meaning outcome determinative of the claim. Shinseki v. Sanders, 129 S. Ct. 1696 (2009).

In this case, VCAA notice letters were sent to the Veteran in April 2005, June 2013, and April 20014. These letters informed the Veteran of what evidence was required to substantiate the claim, and of his and VA's respective duties in obtaining evidence. Thereafter, the case was readjudicated by way of a SOC in June 2006 and supplemental statements of the case (SSOC) in December 2010, August 2012, November 2013, and August 2014. So, he has received all required notice concerning his claim, and it has been reconsidered since providing all required notice.
VA also has a duty to assist the Veteran in the development of his claim. This duty includes assisting the Veteran in the procurement of his service treatment records (STRs) and pertinent post-service treatment records (VA and private), and providing an examination when necessary. 38 U.S.C.A. § 5103A (West 2002); 38 C.F.R. § 3.159 (2014).

The claims file contains service treatment records (STRs), VA medical evidence, and the Veteran's contentions. Significantly, the Veteran has not identified, and the record does not otherwise indicate, any additional existing evidence that is necessary for a fair adjudication of the claim that has not been obtained. Hence, no further notice or assistance to the Veteran is required to fulfill VA's duty to assist him in the development of the claim. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd 281 F.3d 1384 (Fed. Cir. 2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001); see also Quartuccio v. Principi, 16 Vet. App. 183 (2002).

Furthermore, the Veteran was provided a VA examination to assess the severity of his HHD in July 2014. The examination report reflects that the examiner reviewed the Veteran's past medical history, recorded his current complaints, conducted an appropriate evaluation of the Veteran, and rendered an appropriate diagnosis and opinion consistent with the remainder of the evidence of record. The Board, therefore, concludes that this examination is adequate for purposes of rendering a decision in the instant appeal. See 38 C.F.R. § 4.2 (2014); see also Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). The Veteran and his representative have not contended otherwise. Thus, the duties to notify and assist have been met.

II. Stegall Analysis

As previously noted, the Board remanded this case for further development in August 2010, September 2011, June 2013, and February 2014. In the August 2010 remand, the Board specifically instructed the AOJ to obtain all VA treatment records from the Pittsburgh VA Medical Center (VAMC), schedule the Veteran for an examination to determine the current nature, extent, and severity of his HHD, and to readjudicate the claim on appeal. In the September 2011 remand, the Board specifically instructed the AOJ to schedule the Veteran for an examination to determine the current level of severity of his HHD and to readjudicate the claim on appeal. In the June 2013 remand, the Board specifically instructed the AOJ to obtain from the Pittsburgh VAMC all outstanding records of evaluation and/or treatment the Veteran received since August 2012, send the Veteran a Duty to Assist Letter requesting any additional evidence pertinent to his claim, schedule the Veteran for an examination to determine the current level of severity of his HHD, and to readjudicate the claim on appeal. In the February 2014 remand, the Board specifically instructed the AOJ to obtain from the Pittsburgh VAMC all outstanding records of evaluation and/or treatment the Veteran received since June 2013, send the Veteran a Duty to Assist Letter requesting any additional evidence pertinent to his claim, forward the Veteran's claims file to an appropriate examiner for an addendum opinion concerning the current nature, extent, and severity of his service-connected HHD, and to readjudicate the claim on appeal. 

Subsequently, VA treatment records from the Pittsburgh VAMC were obtained and associated with the claims folder, the Veteran was sent Duty to Assist letters in June 2013 and February 2014, and he had VA examinations in July, August, and September 2013, as well as an addendum opinion in July 2014. Thereafter, the Veteran's claim was readjudicated in December 2010, August 2012, November 2013, and August 2014 SSOCs. Thus, there is compliance with the Board's remand instructions. See Stegall v. West, 11 Vet. App. 268, 271 (1998) (noting that where the remand orders of the Board are not complied with, the Board errs as a matter of law when it fails to ensure compliance).

III. Legal Criteria

Increased Ratings

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities, found in 38 C.F.R., Part 4 (2014). The rating schedule is primarily a guide in the evaluation of disability resulting from all types of diseases and injuries encountered as a result of, or incident to, military service. The ratings are intended to compensate, as far as can practicably be determined, the average impairment of earning capacity resulting from such diseases and injuries and their residual conditions in civilian occupations. 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. § 4.1 (2014).

In considering the severity of a disability, it is essential to trace the medical history of the veteran. 38 C.F.R. §§ 4.1, 4.2, 4.41 (2014). Consideration of the whole-recorded history is necessary so that a rating may accurately reflect the elements of disability present. 38 C.F.R. § 4.2 (2014); Peyton v. Derwinski, 1 Vet. App. 282 (1991). While the regulations require review of the recorded history of a disability by the adjudicator to ensure a more accurate evaluation, the regulations do not give past medical reports precedence over the current medical findings. Where an increase in the disability rating is at issue, the present level of the veteran's disability is the primary concern. Francisco v. Brown, 7 Vet. App. 55, 58 (1994).

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. See 38 C.F.R. § 4.7 (2014). Reasonable doubt regarding the degree of disability will be resolved in the veteran's favor. 38 C.F.R. § 4.3 (2014).

Lay Statements

In its determinations, the Board must fully consider the lay assertions of record. A layperson is competent to report on the onset and continuity of his current symptomatology. See Layno v. Brown, 6 Vet. App. 465, 470 (1994) (noting that a Veteran is competent to report on that of which he or she has personal knowledge). Lay evidence can also be competent and sufficient evidence of a diagnosis or to establish etiology if (1) the layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009); Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007). When considering whether lay evidence is competent the Board must determine, on a case by case basis, whether the Veteran's particular disability is the type of disability for which lay evidence may be competent. Kahana v. Shinseki, 24 Vet. App. 428 (2011); see also Jandreau v. Nicholson, 492 F.3d 1372, 1376-77.

The Board must assess the credibility and weight given to evidence. Madden v. Gober, 125 F.3d 1477, 1481 (Fed. Cir. 1997), cert. denied, 523 U.S. 1046 (1998); Wensch v. Principi, 15 Vet. App. 362, 367 (2001). In Jefferson v. Principi, 271 F.3d 1072 (Fed. Cir. 2001), the United States Court of Appeals for the Federal Circuit, citing its decision in Madden, recognized that that Board had inherent fact-finding ability. Id. at 1076; see also 38 U.S.C.A. § 7104(a) (West 2002). Moreover, the United States Court of Appeals for Veterans Claims (Court) has declared that in adjudicating a claim, the Board has the responsibility to weigh and assess the evidence. Bryan v. West, 13 Vet. App. 482, 488-89 (2000); Wilson v. Derwinski, 2 Vet. App. 614, 618 (1992). As a finder of fact, when considering whether lay evidence is satisfactory, the Board may also properly consider internal inconsistency of the statements, facial plausibility, consistency with other evidence submitted on behalf of the Veteran, and the Veteran's demeanor when testifying at a hearing. See Dalton v. Nicholson, 21 Vet. App. 23, 38 (2007); Caluza v. Brown, 7 Vet. App. 498, 511 (1995), aff'd per curiam, 78 F.3d 604 (Fed.Cir.1996).

IV. Analysis

The Veteran contends that he is entitled to a rating greater than 60 percent for his service-connected HHD.

The Veteran filed his current claim for an increased rating in March 2005. A June 2006 RO rating decision awarded a 30 percent rating for "HYPERTENSIVE HEART DISEASE (previously evaluated as hypertension with mild cardiomegaly)" under DC 7101-7007.

As noted by the Board in the June 2013 remand, a note to DC 7101 instructs VA raters to evaluate hypertension separate from HHD and other types of heart disease. 38 C.F.R. § 4.104, DC 7101, Note (3) (2014).

Hypertensive heart disease is rated under 38 C.F.R. § 4.104, DC 7007 (2014). The currently assigned 60 percent rating contemplates more than one episode of acute congestive heart failure in the past year, or; workload of greater than 3 METs but not greater than 5 METs results in dyspnea, fatigue, angina, dizziness, or syncope, or; left ventricular dysfunction with an ejection fraction of 30 to 50 percent. Id. 

One MET is the energy cost of standing quietly at rest and represents an oxygen uptake of 3.5 milliliters per kilogram of body weight per minute. When the level of METs at which dyspnea, fatigue, angina, dizziness, or syncope develops is required for evaluation, as it is in this situation, and a laboratory determination of METs by exercise testing cannot be accomplished for medical reasons, an estimation by a medical examiner of the level of activity (expressed in METs and supported by specific examples, such as slow stair climbing or shoveling snow) that results in dyspnea, fatigue, angina, dizziness, or syncope may be used. Id. Note (2).

The maximum 100 percent evaluation is warranted where there is chronic congestive heart failure, or workload of 3 METs or less results in dyspnea, fatigue, angina, dizziness, or syncope; or left ventricular dysfunction with an ejection fraction of less than 30 percent. Id. 

Having carefully considered the Veteran's claim in light of the evidence of record, as well as the applicable law and regulation, the Board finds that the currently assigned 60 percent rating for HHD is appropriate and a higher rating is not warranted at this time, to include 'staged' ratings. 38 C.F.R. § 4.7 (2014); See Hart, supra.

An April 2004 Pittsburgh VAMC treatment report noted x-ray evidence of cardiac hypertrophy (cardiomegaly).

An April 2005 Compensation and Pension (C&P) examination for hypertension noted that the Veteran was diagnosed with hypertension in approximately 1983 or 1984. The Veteran denied any symptoms at the time. He was being treated with medication. His heart was noted to have a regular rate and rhythm with slightly displaced from the mid-clavicular line in the fifth intercostal space. The Veteran was diagnosed with chronic hypertension with elevated BUN and creatinine and cardiomegaly.

In a January 2008 C&P examination, the Veteran reported that he was diagnosed with hypertension in service in 1979. He was unable to cite a specific date. He did not recall taking any medication. He reported he began medication in 1988 after he was discharged from service. His medical record documented mild cardiomegaly. Creatinine was 1.9 as of December 2007. He was taking Lisinopril as a prophylactic. The Veteran denied any episodes of congestive heart failure. He reported rare pedal edema, which would not be consistent with heart failure. He denied any cardiac symptoms such as angina, dyspnea, fatigue, dizziness, and syncope. He had no history of myocardial infarction, rheumatic heart disease, no medical evidence of valvular heart disease, arteriosclerotic heart disease, or cardiomyopathy. Chest x-rays revealed mild cardiomegaly without abnormal pulmonary vascular markings. The Veteran was diagnosed with hypertension associated with mild cardiomegaly. 

The Veteran was scheduled for a VA examination in November 2010 but failed to report. 

In a November 2011 C&P examination for hypertension, the Veteran was diagnosed with hypertension. On the examination report, the Veteran noted that he was diagnosed in approximately 1980-1981 and began medication in 1988 after being discharged from service. His medical record documented mild cardiomegaly and stage III chronic kidney disease. Creatinine was 1.9 as of December 2007. The Veteran was on Lisinopril as a prophylactic and he denied any episodes of congestive heart failure. He reported rare pedal edema which would not be consistent with heart failure. The examiner reported that the Veteran's treatment plan included taking continuous medication for hypertension or isolated systolic hypertension, which included Furosemide and sodium bicarbonate. 

In a July 2013 C&P examination for hypertension, the Veteran was diagnosed with hypertension. The Veteran denied chest pain, orthopnea, paroxysmal nocturnal dyspnea (PND) palpitation, or headaches, but had shortness of breath with moderate exertion. He had no history of any known coronary artery diseases. The Veteran's heart had an apical impulse that could not be palpated, S1and S2 was normal, and there was no additional sound. Electrocardiogram (ECG) revealed normal sinus rhythm, first degree heart block, and right bundle branch block with left anterior fascicular block that was otherwise normal. The echocardiogram revealed mild left atrium enlargement, mild concentric left ventricular hypertrophy (LVH), low normal left ventricular ejection fraction (LVEF) 50 to 55 percent with abnormal diastolic function, and mild aortic root enlargement with normal PA pressure. The assessment of the Veteran was that he had long standing hypertension going back at least 14 years with evidence of target organ damage. There was evidence of hypertensive changes in the heart as evidenced by the ECG and echocardiogram. The VA examiner noted that although the use of cocaine, glucose intolerance, and renal failure may contribute to the changes in the heart, hypertension was the most common cause of concentric LVH and contributed in causing these changes. The examiner remarked that the echocardiogram and ECG findings, along with the physical findings on examination, were at least as likely as not caused by long standing hypertension and indicated hypertensive heart disease.

In an August 2013 C&P examination, the VA examiner opined that in order to determine the Veteran's impairment of METs, an exercise test was necessary, which was not done in the previous examination. The examiner continued, stating that any impairment in METs on the exercise test could not be attributed exclusively to the Veteran's hypertension or hypertensive disease because of co-morbidities, such as renal failure, and the test was felt to be unnecessary. Based on the Veteran's history though, the examiner opined that the Veteran was able to carry out all the activities of daily life and walk more than 4-5 blocks, and that based on his educated guess, does not have more than mild impairment. 

In a November 2013 C&P examination, the examiner noted that the Veteran underwent a stress test on September 11, 2013. The Veteran was not able to complete stage I of the test due to back and leg pain. The stress test was converted to a pharmacological stress test, regadenson myocardial perfusion, which did not show any ischemia and did not give an estimation of the Veteran's METs. The VA examiner stated that in this situation, it was impossible to assess the functional capacity in terms of METs. As a result of the regadenson stress test, no EKG changes were noted, myocardial perfusion was normal, and LVEF was normal at 62 percent. The examiner noted that there was normal myocardial thickening. 

A February 2014 Board decision found that the Veteran's VA examination reports were inadequate for reaching a final decision regarding the issue of an increased rating for HHD. The decision noted that the Veteran's representative had calculated the Veteran's workload capacity at 2.59 METs, by reference to a chart published by the National Cancer Institute, entitled "Metabolic Equivalent (MET) Values for Activities in American Time Use Survey (ATUS)." This assessment was not consistent with the August 2013 C&P examiner's opinion of "mild" impairment. 

In a July 2014 C&P opinion, the examiner opined that after reviewing the conflicting medical evidence, including the clinical evaluations of the Veteran and the medical entries, it appeared that the Veteran could achieve an estimated METs of 5-7. He could walk 1.5 blocks before he experienced leg pain, as secondary to his peripheral vascular disease and not related to his heart condition, and could slowly climb a flight of stairs. The examiner opined that the Veteran could complete all activities of daily living.

The Veteran's disability picture most nearly approximates the criteria contemplated by a 60 percent rating under DC 7007. 38 C.F.R. § 4.104, DC 7007 (2014). This rating contemplates more than one episode of acute congestive heart failure in the past year, or; workload of greater than 3 METs but not greater than 5 METs results in dyspnea, fatigue, angina, dizziness, or syncope, or; left ventricular dysfunction with an ejection fraction of 30 to 50 percent. Id. In the July 2013 C&P examination report, it was noted that the Veteran's LVEF was 50 to 55 percent with abnormal diastolic function.

Based on this evidence, the criteria for a rating in excess of 60 percent for the Veteran's HHD have not been met pursuant to DC 7007. Id. Should the Veteran's disability picture change in the future, he may be assigned a higher rating. See 38 C.F.R. § 4.1 (2014).

At no point since the Veteran's claim for HHD was filed in March 2005 did he qualify for a 100 percent rating for HHD. 38 C.F.R. § 4.104, DC 7007 (2014). He has never been diagnosed with congestive heart failure, he does not have a workload of 3 METs or less that resulted in dyspnea, fatigue, angina, dizziness, or syncope, and his left ventricular dysfunction with an ejection fraction is not less than 30 percent. Id. As noted previous, on the July 2013 C&P examination report, the Veteran's LVEF was 50-50 percent. On the July 2014 C&P opinion report, the examiner estimated that the Veteran's METs was 5-7.

The Board has not overlooked the Veteran's statements with regard to the severity of his HHD. The Board notes that the Veteran is competent to report observable HHD symptoms. See Layno v. Brown, 6 Vet. App. 465 (1994). The Board finds that the Veteran's lay reports concerning symptomatology are credible. See Washington v. Nicholson, 19 Vet. App. 362, 368 (2005). Although the Veteran has reported shortness of breath with moderate exertion, these symptoms have been considered in the current evaluation. See 38 C.F.R. § 4.59 (2014). The Board notes, with respect to the Rating Schedule, where the criteria set forth therein require medical expertise which the Veteran has not been shown to have, the objective medical findings and opinion provided by the July 2013 and 2014 VA examination reports have been accorded greater probative weight. The Board notes that while the July 2013 C&P examination report was inadequate due to being incomplete (missing METs value), it did provide left ejection fraction results. This evidence was prepared by neutral medical professionals, and such evidence demonstrates that the currently assigned rating is warranted for the Veteran's disability, and no higher rating is warranted.
Extraschedular Considerations

An exceptional or unusual disability picture occurs where the diagnostic criteria do not reasonably describe or contemplate the severity and symptomatology of a veteran's service-connected disability. Thun v. Peake, 22 Vet. App. 111, 115 (2008). If there is an exceptional or unusual disability picture, then the Board must consider whether the disability picture exhibits other factors such as marked interference with employment and frequent periods of hospitalization. Thun, 22 Vet. App. At 115-16. When those two elements are met, the appeal must be referred for consideration of the assignment of an extraschedular rating to the Chief Benefits Director or the Director, Compensation and Pension Service, for consideration of an extraschedular evaluation. 38 C.F.R. 
§ 3.321(b)(1) (2014). Otherwise, the schedular evaluation is adequate, and referral is not required. Thun, 22 Vet. App. at 116.

The schedular rating in this case is adequate. The diagnostic criteria contemplate and adequately describe the symptomatology of the Veteran's service-connected HHD. See Thun, 22 Vet. App. at 115. When comparing the Veteran's HHD symptoms with the schedular criteria, the Board finds that his symptoms of shortness of breath with moderate exertion are congruent with the disability picture represented by the 60 percent rating assigned herein. See 38 C.F.R. § 4.104, DC 7007 (2014). Accordingly, a comparison of the Veteran's symptoms and functional impairments resulting from HHD with the pertinent schedular criteria does not show that his service-connected HHD presents "such an exceptional or unusual disability picture... as to render impractical the application of the regular schedular standards." 38 C.F.R. § 3.321(b) (2014).

Consequently, the Board finds that the available schedular rating is adequate to rate the Veteran's HHD. Based on this threshold finding, there is no need to consider whether there are "related factors" such as marked interference with employment or frequent periods of hospitalization. See Thun, 22 Vet. App. at 118-19 (holding that the Board's finding that the rating criteria were adequate to evaluate the veteran's disability was a sufficient basis for denying extraschedular consideration without regard to whether there was marked interference with employment). As such, referral for extraschedular consideration is not warranted. See VAOPGCPREC 6-96.

TDIU Considerations

Additionally, the Board is cognizant of the ruling of the United States Court of Appeals for Veterans Claims (Court) in Rice v. Shinseki, 22 Vet. App. 447 (2009). In Rice, the Court held that a claim for a total rating based on unemployability due to service-connected disability (TDIU), either expressly raised by the Veteran or reasonably raised by the record involves an attempt to obtain an appropriate rating for a disability and is part of the claim for an increased rating. In this case, the Veteran has already been granted TDIU in a May 2008 rating decision, effective October 16, 2006.


ORDER

Entitlement to an increased rating for HHD (previously characterized as hypertension with cardiomegaly), in excess of 60 percent, is denied.




____________________________________________
MILO H. HAWLEY
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs